UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Glenn Trimble | : | |
| 7677 St. Rt. 335 | : | |
| Beaver, Ohio 45613, | : | Case No. |
| | : | |
| Plaintiff, | : | Judge: |
| | : | |
| v. | : | |
| | : | **COMPLAINT WITH JURY** |
| Sofidel America Corp. | : | **DEMAND ENDORSED HEREIN** |
| 300 Welsh Road | : | |
| Building One, Suite 200 | : | |
| Horsham, PA 19044 | : | |
| | : | |
| Defendant. | : | |

1. This is an action for damages for violations of the Employee Polygraph Protection Act (EPPA) 29 U.S.C.S. §2001, et seq. and the Americans with Disabilities Act ("ADA") as amended by the ADA Amendments Act 42 U.S.C.A. §12101 et. seq.

2. This court has subject-matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §1331 as the civil claims herein arise under the laws of the United States.

3. Venue is proper pursuant to 28 U.S.C. 1391 because the events or omissions giving rise to the claim occurred.

**PARTIES:**

4. Plaintiff Glenn Trimble is a resident of Pike County, Ohio.

5. Defendant Sofidel America Corp. is a foreign corporation licensed and doing business in Pickaway County, Ohio.

**BACKGROUND FACTS:**

6. Trimble, a disabled U.S. Army veteran, was employed at Defendant's Circleville plant as a forklift operator beginning in October 2021.

1

7. Trimble received high marks on his initial performance evaluations, had a superior attendance record, and no disciplinary history.

8. He was unlawfully terminated from that position on July 25, 2022.

9. On Thursday, June 23, 2022, two fires were set within Defendant's Circleville facility, one in Warehouse D, and the second in Warehouse F.

10. Trimble learned about the fires from co-workers.

11. On that day, Trimble was primarily working in Warehouse F unloading trucks and putting away stock.

12. As was his usual practice, Trimble took his smoke breaks in a break area outside of Warehouse D, as did other employees and temporary employees.

13. During Defendant's investigation of the fires, Trimble was apparently identified as a witness and/or a suspect.

14. He was called into an investigatory meeting by Safety Manager Randy Kuhner.

15. Josh Brickles, Health and Safety Representative, and Security Supervisor Amanda Ryder were also present.

16. Trimble was questioned about his whereabouts during the fire, and he recounted his movements to the best of his ability.

17. Trimble is disabled because of his combat service in Iraq.

18. He suffers with PTSD, migraines, and high blood pressure.

19. He admits to being easily confused about dates and times and suffers anxiety when under stress.

20. His timeline and recounting of events were not precise.

21. During the meeting, Mr. Kuhner was being aggressive and accusatory.

22. Trimble denied any involvement in setting the fires.

23. He signed a statement and finished his workday.

24. Other employees were also interviewed and asked to give statements.

25. Trimble was off work for the next three days and reported to work again on Monday June 27, 2022.

26. On that day, he was called into a second investigatory meeting.  Present in the meeting were: Facility Manager Mike Forester, Josh Brickles, and Warehouse Manager, Richard Bowe.

27. Forester took the lead asking many of the same questions as before. He told Trimble he was an experienced investigator.

28. Trimble responded to his questions to the best of his ability and again, signed a statement reflecting his answers.

29. On Tuesday June 28th, Trimble was questioned by detectives from the Pickaway County Sheriff's department.

30. The meeting was recorded.

31. Trimble voluntarily answered all their questions.

32. On July 7, 2022 at 5:30 p.m. Trimble was escorted to another meeting by Mr. Bowe.

33. Forester was present and informed Trimble that he didn't want anyone who starts fires working at Sofidel's warehouse.

34. Trimble again denied any involvement in the fires.

35. Forester informed him that he was being suspended with pay and that he needed to report to the Pickaway County Sheriff's department to undergo a polygraph test.

36. Forester stated that if Mr. Trimble did not take a polygraph, he would be terminated.

37. Defendant did not present Trimble with any sort of written statement.

38. Defendant did not present Trimble with a written statement setting forth the details of the investigation, nor did Defendant provide Trimble with information about the economic loss or injury to the business suffered as a result of the fires, nor did Defendant provide Trimble with a statement of the basis for Defendant's reasonable suspicion, if any, that he was involved in setting the fires.

39. Trimble called the Sheriff's office and spoke with a Detective Brushart.

40. A polygraph examination was scheduled for July 18, 2022.

41. Trimble informed Supervisor Bowe of the test date via voicemail.

42. On July 18th Trimble appeared for the polygraph. The detectives who met him in the lobby of the Sheriff's department advised him that he did not legally have to submit to the test.

43. Trimble explained that he suffers with PTSD. He candidly told the officers that he was very upset by the threat of losing his job and was experiencing anxiety.

44. The officers offered to allow him to talk to the polygraph examiner to understand the process.

45. Trimble met with the officer in a small room where the polygraph was set up. He asked whether his anxiety would affect the outcome of the test and the Examiner explained the process.

46. Trimble's condition dissolved into a full-blown panic attack and the officers called the emergency squad.

47. Trimble refused treatment and asked about recommencing the test, but the officers refused to allow it.

48. Detective Brushart informed Trimble that he was not a suspect as far as the Sheriff was concerned.

49. No criminal charges were filed against Trimble.

50. On July 19, 2022, Trimble contacted Bowe.

51. Bowe asked whether he had completed the test and Trimble informed him that he should contact Detective Brushart.

52. Trimble was suspended, but his girlfriend, Michelle Thompson, who is also employed by Sofidel, continued working.

53. While Trimble was suspended, Thompson told Bowe, HR Manager Amy Parsons, and Warehouse Manager Rob Parsley how the entire episode was affecting Trimble.

54. She informed them that he was depressed about being accused of arson and devastated over the potential loss of his job.

55. Parsley and Parsons were both previously aware of Trimble's disabilities and his status as a disabled veteran.

56. Bowe stated that he could not talk to Thompson about Trimble, but stated, "all he has to do is take the polygraph and pass it, then he can come back to work."

57. True to Mr. Forester's word, on July 25, 2022, Ms. Parsons informed Trimble that he was terminated.

58. Trimble filed an EEOC charge against Defendant alleging disability discrimination pursuant to the ADA.

59. The EEOC issued a Notice of Right to Sue letter on December 22, 2022.

## COUNT I
## VIOLATION OF THE EMPLOYEE POLYGRAPH PROTECTION ACT
## 29 U.S.C. §2002 et seq.

60. Trimble restates and incorporates the foregoing paragraphs as if fully rewritten herein.

61. The EPPA makes it unlawful for an employer to directly or indirectly require, request, suggest, or cause any employee to take or submit to any lie detector test.

5

62. The EPPA makes it unlawful for an employer to use, accept, refer to, or inquire concerning the results of any lie detector test.

63. The EPPA makes it unlawful for an employer to discharge, discipline, discriminate against in any manner, or deny employment or promotion to, or threaten to take any such action against any employee who refuses, declines, or fails to take or submit to any lie detector test.

64. Defendant is an employer engaged in or affecting commerce or in the production of goods for consumers and is therefore an employer covered under the EPPA.

65. Defendant violated the EPPA by threatening Trimble with termination if he did not take and pass a polygraph test.

66. Defendant violated the EPPA by suspending Trimble without pay until he took and passed a polygraph test.

67. Defendant informed Plaintiff that the test was mandatory.

68. Although Defendant was investigating arson within its facility, Defendant did not present Trimble with a written statement setting forth the details of the investigation, nor did Defendant provide Trimble with information about the economic loss or injury to the business suffered as a result of the fires, nor did Defendant provide Trimble with a statement of the basis for Defendant's reasonable suspicion, if any, that he was involved in setting the fires.

69. Trimble attempted to comply with Defendant's mandatory testing requirement but was unable to do so because of his disability.

70. Defendant terminated Trimble in whole or in part because of his failure/inability to complete the polygraph examination.

71. Defendant's conduct was malicious and in wanton and reckless disregard of Trimble's rights.

72. As a direct and proximate result of Defendant's unlawful conduct, Trimble has suffered damages, for which he is entitled to compensation.

## COUNT II
## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA
## 42 U.S.C.A. §12101 et. seq.

73. Trimble restates and incorporates the foregoing paragraphs as if fully rewritten herein.

74. Defendant is an employer as that term is defined by the ADA.

75. Trimble is disabled as that term is defined by the ADA.

76. Upon information and belief, Defendant unlawfully targeted Trimble for investigation because of his disability.

77. Trimble was the only employee who was required to take a polygraph examination in order to keep his job.

78. Because of his disability, Trimble was unable to complete the polygraph.

79. Because of his disability, the Pickaway County Sheriff would not allow him to proceed with the polygraph.

80. The Pickaway County Sheriff informed Defendant about why Trimble was unable to proceed with the polygraph test.

81. Despite being informed that Trimble was unable to complete the polygraph test because of his disability, Defendant terminated him.

82. Defendant violated the ADA by targeting Trimble and terminating Trimble because of his disability.

83. Defendant's conduct was malicious and in wanton and reckless disregard of Trimble's rights.

84. Trimble has been damaged by Defendant's unlawful conduct such that he is entitled to damages therefore, including back-pay, front-pay, compensatory, and punitive damages.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully prays that this Court grant him:

a. lost past and future wages and benefits in excess of $75,000;

b. compensatory damages;

c. nominal damages;

d. an amount in excess of $75,000.00 in compensatory damages for garden variety emotional distress;

e. attorney fees and costs;

f. prejudgment and post judgment interest;

g. such other equitable and further relief as may be just and appropriate.

Respectfully Submitted,

*/s/Sharon Cason-Adams*
Sharon Cason-Adams (0067550)
AGEE CLYMER MITCHELL & PORTMAN
140 East Town St., Suite 1100
Columbus, Ohio 43215
Telephone: 614-221-3318
Facsimile: 614-221-7308
scasonadams@ageeclymer.com
*Attorney for Plaintiff Glenn Trimble*

**JURY DEMAND**

Plaintiff hereby demands trial by jury on all issues triable before a jury.

*/s/Sharon Cason-Adams*
Sharon Cason-Adams